Approved: _____
GEORGE D. TURNER / SIDHARDHA KAMARAJU / JANE KIM
Assistant United States Attorneys

Before:   HONORABLE JAMES L. COTT
          United States Magistrate Judge
          Southern District of New York

**17 MAG 4763**

------------------------------------X
UNITED STATES OF AMERICA           :     **COMPLAINT**
              - v. -               :     Violations of
                                         18 U.S.C. §§ 2339B & 2
SADDAM MOHAMED RAISHANI,           :
   a/k/a "Adam Raishani,"                COUNTY OF OFFENSE: BRONX
                                   :
              Defendant.
                                   :
------------------------------------X

STATE OF NEW YORK       )
                        )  ss.:
COUNTY OF NEW YORK      )

   WILLIAM SLATTERY, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

## COUNT ONE

### (Attempted Provision of Material Support and Resources to a Designated Foreign Terrorist Organization)

   1.   From at least in or about January 2017, up to and including in or about June 2017, in the Southern District of New York and elsewhere, SADDAM MOHAMED RAISHANI, a/k/a "Adam Raishani," the defendant, did knowingly and intentionally attempt to provide "material support or resources," as that term is defined in Title 18, United States Code, Section 2339A(b), including personnel and services, to a foreign terrorist organization, to wit, the Islamic State of Iraq and al-Sham ("ISIS"), which at all relevant times has been designated by the Secretary of State as a foreign terrorist organization, pursuant to Section 219 of the Immigration and Nationality Act ("INA"), and is currently designated as such as of the date of this Complaint, knowing that ISIS was a designated foreign terrorist organization (as defined in Title 18, United States Code,

Section 2339B(g)(6)), that ISIS engages and has engaged in terrorist activity (as defined in Section 212(a)(3)(B) of the INA), and that ISIS engages and has engaged in terrorism (as defined in section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989).

(Title 18, United States Code, Sections 2339B and 2.)

The bases for my knowledge and the foregoing charge are, in part, as follows:

2. I am a Special Agent with the FBI, and I am assigned to a counterterrorism squad. I have been personally involved in the investigation of this matter. This affidavit is based in part upon my training and experience, my involvement in this and other investigations, my conversations with law enforcement agents and other people, and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all of the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## Overview

3. SADDAM MOHAMED RAISHANI, a/k/a "Adam Raishani," the defendant, is a 30-year-old resident of the Bronx, New York. As set forth in greater detail below, RAISHANI is an ISIS supporter who attempted to travel overseas to join ISIS this month, i.e., June 2017. Since early 2017, RAISHANI has repeatedly demonstrated his allegiance to and support for ISIS, and has discussed his desire and plans for joining ISIS overseas, in the course of audio- and video-recorded conversations with an undercover New York City Police Department ("NYPD") detective ("UC-1") and an FBI/NYPD confidential source (the "CS").[1] In the past few weeks, RAISHANI has informed UC-1 and the CS that he has paid off outstanding debts and quit his

---

[1] Based on my involvement in this investigation, including my communications with law enforcement personnel, I understand that the CS is a paid source who has worked on multiple investigations, and that information provided by the CS has proven reliable, has resulted in arrests and prosecutions, and has been corroborated by independent evidence, including audio/video recordings and other source information.

job, in preparation for leaving the United States to join ISIS. RAISHANI also purchased an airline ticket for a flight scheduled to depart on June 21, 2017, from John F. Kennedy International Airport, New York, New York ("JFK Airport"), to Istanbul, Turkey, via Lisbon, Portugal, to join ISIS. On June 21, 2017, RAISHANI traveled to JFK Airport, where he was arrested by the FBI after he attempted to board that flight to Portugal on his way to Turkey.

## The Islamic State of Iraq and al-Sham

4. On October 15, 2004, the United States Secretary of State designated al Qaeda in Iraq ("AQI"), then known as Jam'at al Tawhid wa'al-Jihad, as a Foreign Terrorist Organization ("FTO") under Section 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist under section 1(b) of Executive Order 13224. On May 15, 2014, the Secretary of State amended the designation of AQI as an FTO under Section 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist entity under section 1(b) of Executive Order 13224 to add the alias Islamic State of Iraq and the Levant ("ISIL") as its primary name. The Secretary also added the following aliases to the FTO listing: the Islamic State of Iraq and al-Sham ("ISIS" — which is how the FTO will be referenced herein), the Islamic State of Iraq and Syria, ad-Dawla al-Islamiyya fi al-'Iraq wa-sh-Sham, Daesh, Dawla al Islamiya, and Al-Furqan Establishment for Media Production. In an audio recording publicly released on June 29, 2014, ISIS announced a formal change of its name to the Islamic State. On September 21, 2015, the Secretary added the following aliases to the FTO listing: Islamic State, ISIL, and ISIS. To date, ISIS remains a designated FTO.

5. The State Department has reported that, among other things, ISIS has committed systematic abuses of human rights and violations of international law, including indiscriminate killing and deliberate targeting of civilians, mass executions and extrajudicial killings, persecution of individuals and communities on the basis of their religion, nationality, or ethnicity, kidnapping of civilians, forced displacement of Shia communities and minority groups, killing and maiming of children, rape, and other forms of sexual violence. According to the State Department, ISIS has recruited thousands of foreign fighters to Iraq and Syria from across the globe and leveraged technology to spread its violent extremist ideology and for incitement to commit terrorist acts.

### RAISHANI's Efforts to Travel Overseas to Join ISIS

RAISHANI Expresses His Support for ISIS and His Desire to Travel Overseas to Join ISIS

6. Based on my training and experience and my involvement in this investigation, including my review of reports of debriefings of the CS and UC-1 and audio and video recordings of in-person meetings involving SADDAM MOHAMED RAISHANI, a/k/a "Adam Raishani,", the CS, and UC-1, I have learned the following, in substance and in part:

   a. The CS met RAISHANI in or about early 2016. As of January 2017, the CS had not seen RAISHANI since in or about August 2016. On or about January 15, 2017, RAISHANI contacted the CS by phone, and asked if they could meet in person to talk.

   b. The following day, on or about January 16, 2017, the CS met RAISHANI in Queens, New York, and they engaged in conversation inside the CS's car. In the course of that meeting, RAISHANI and the CS discussed the following, in substance and among other things:

      i. The CS and RAISHANI discussed the history of Islam, as they had when they first met in early 2016.

      ii. The CS observed an image on RAISHANI's cellphone of a black flag that the CS recognized as associated with ISIS. The CS asked RAISHANI if he believed in ISIS. RAISHANI responded, in Arabic: "May God guide them."[2] RAISHANI then told the CS that before continuing the conversation, they should turn off their cellphones, which they did.

      iii. As the conversation continued, RAISHANI indicated to the CS that a friend of his ("Person-1") had left New York City to join the Islamic State some time ago. RAISHANI conveyed that, prior to Person-1's departure, RAISHANI took Person-1 shopping to buy supplies for bringing to the Islamic

---

[2] The calls and meetings discussed herein involving SADDAM MOHAMED RAISHANI, a/k/a "Adam Raishani," the defendant, the CS, and UC-1 were conducted almost entirely in English, with occasional Arabic. I do not speak Arabic, and to the extent this affidavit includes descriptions of Arabic-language portions of such calls and meetings, those descriptions are based on my review of reports of debriefings of the CS, who speaks Arabic.

4

State, and that on the day of Person-1's departure, RAISHANI gave money to Person-1 and drove with Person-1 to JFK Airport.

      iv. RAISHANI further communicated that he had asked his wife if she would go with him to the Islamic State. RAISHANI conveyed to the CS that, based on her reaction, he would not ask her again, because he was worried that she would report him to law enforcement.

      v. RAISHANI suggested that the CS download a particular Internet browser (the "Browser") that enables its users to conceal their online activity. RAISHANI told the CS that he used the Browser to watch ISIS and jihadi videos online.

    c. Over the course of the ensuing months, RAISHANI remained in contact with the CS by phone, and periodically met the CS in person. For example, on or about January 26, 2017, the CS met RAISHANI in the Bronx, and they engaged in conversation inside RAISHANI's car. In the course of that meeting,[3] RAISHANI and the CS discussed the following, in substance and among other things:

      i. RAISHANI conveyed to the CS that he had recently watched a video that instructed that to answer God's call and avoid humiliation, one must go to the Islamic State. RAISHANI indicated that he felt humiliated for not having traveled with Person-1 to join the Islamic State.

      ii. As the CS exited RAISHANI's car at the end of the meeting, RAISHANI stated, in Arabic, "May God grant us martyrdom."

    d. On or about February 2, 2017, the CS met RAISHANI in the Bronx, and they engaged in conversation inside RAISHANI's car. In the course of that meeting, which was partially audio- and video-recorded,[4] RAISHANI and the CS discussed the following, in substance and among other things:

---

[3] The CS wore recording equipment during the meeting; however, the recording equipment malfunctioned in the course of the meeting, such that the meeting was not recorded.

[4] The recording equipment worn by the CS during this meeting malfunctioned during the course of the meeting, resulting in a partial recording. The partial recording reflects all of the statements referenced in paragraphs 6(d)(i) through (iii).

5

            i.    RAISHANI expressed anger that the daughter of Anwar al-Awlaki reportedly had been killed by U.S. forces in Yemen.[5] RAISHANI referred to al-Awlaki as the "Godfather."

            ii.    RAISHANI warned the CS to be careful when using his/her computer to watch pro-ISIS videos online, and advised the CS to use the Browser, cover the computer's camera, and turn off the computer's microphone, when watching such videos.

            iii.    The CS referenced that he/she had a friend who was a "true brother," and indicated that he/she would introduce RAISHANI to the "true brother" at a future meeting.

        e.    On or about February 16, 2017, in the vicinity of a certain mosque in the Bronx, the CS introduced RAISHANI to UC-1, who was posing, for purposes of this investigation, as an ISIS supporter and the "true brother" mentioned by the CS during the CS's prior conversation with RAISHANI on or about February 2, 2017, see supra ¶ 6(d)(iii). In the course of the February 16, 2017 meeting, which was audio- and video-recorded, in substance and among other things, the CS, UC-1, and RAISHANI discussed downloading the Browser and watching pro-ISIS videos online.

        f.    On or about March 2, 2017, the CS and UC-1 met RAISHANI at a particular apartment in the Bronx used by UC-1 (the "UC-1 Apartment"). At that meeting, which was audio- and video-recorded, the following occurred, in substance and among other things:

            i.    RAISHANI used a laptop computer (the "Laptop") that UC-1 provided. Before using the Laptop, RAISHANI put on latex gloves, and explained to the CS and UC-1 that he did not want to leave his fingerprints on the Laptop. RAISHANI observed that tape had been placed over the camera on the Laptop, and expressed his approval of that measure. Once the Laptop was turned on, RAISHANI showed the CS and UC-1 how to use

---

[5] Through my training and experience, I know that, prior to his death in 2011, Anwar al-Awlaki was a leader of al Qaeda in the Arabian Peninsula. Based on my review of publicly available materials, I understand that al-Awlaki's daughter was reportedly killed on or about January 27, 2017, during an operation carried out by U.S. forces in Yemen.

the Browser.  RAISHANI then used the Browser to download several pro-ISIS videos and viewed them with the CS and UC-1.

              ii.  After watching the videos, RAISHANI erased the downloaded video files from the Laptop, and explained to the CS and UC-1 that he did so in order to evade law enforcement detection, among other things.

        g.  On or about March 9, 2017, the CS and UC-1 met RAISHANI in the vicinity of a certain mosque in the Bronx. In the course of that meeting, which was audio-recorded, RAISHANI informed the CS and UC-1 that he had to be careful, as he believed that federal authorities might be monitoring his activities.

        h.  On or about March 29, 2017, the CS met RAISHANI at a certain mosque in Queens, and they subsequently engaged in conversation inside RAISHANI's car.  In the course of that meeting,[6] RAISHANI and the CS discussed the following, in substance and among other things:

              i.  RAISHANI explained how the Quran can be read to justify the violence, including beheadings, engaged in by ISIS.

              ii.  RAISHANI conveyed to the CS that before Person-1 traveled to join ISIS, Person-1 had communicated with an ISIS member overseas to arrange his travel.

              iii.  RAISHANI indicated again that he felt humiliated for not having traveled with Person-1 to join the Islamic State.

              iv.  RAISHANI advised that in order for him to fully trust the CS, the CS would need to demonstrate his/her support for ISIS more openly when he/she was with RAISHANI.

              i.  On or about March 30, 2017, RAISHANI called the CS.  In the course of that call, RAISHANI told the CS that he/she should download a particular messaging application accessible on cellphones (the "Application").

        j.  On or about April 13, 2017, the CS and UC-1 met RAISHANI at the UC-1 Apartment.  In the course of that

---

[6] The CS wore recording equipment during the meeting; however, the recording equipment malfunctioned in the course of the meeting, such that the meeting was not recorded.

7

meeting, which was audio-recorded, the following occurred, in substance and among other things:

        i. RAISHANI used the Laptop to download and play multiple pro-ISIS videos discussing, among other things, different branches of ISIS in different countries.

        ii. RAISHANI referenced having participated in a particular chat group on the Application comprised of ISIS supporters.

        iii. RAISHANI conveyed that he did not watch the news because the media speaks negatively of ISIS, which is wrong.

        iv. RAISHANI indicated that he no longer felt comfortable in America.

    k. On or about April 14, 2017, UC-1 met RAISHANI in the Bronx, and they engaged in conversation inside RAISHANI's car, which was audio-recorded. In the course of that meeting, the following occurred, in substance and among other things:

        i. RAISHANI used his cellphone to show UC-1 a video that appeared to depict ISIS supporters discussing their desire to travel overseas to join ISIS.

        ii. RAISHANI discussed certain steps that Person-1 had taken prior to traveling overseas, such as obtaining funding for the trip, securing a travel visa, and purchasing supplies. RAISHANI indicated that successfully traveling overseas to join ISIS requires preparation and planning.

### RAISHANI Prepares to Travel Overseas to Join ISIS

    7. Based on my training and experience and my involvement in this investigation, including my review of reports of debriefings of the CS and UC-1,, audio and video recordings of in-person meetings involving SADDAM MOHAMED RAISHANI, a/k/a "Adam Raishani," the defendant, the CS, and UC-1, electronic communications on the Application involving RAISHANI, an FBI employee acting in an undercover capacity ("UC-2"), and the CS, and my conversations with UC-2, I have learned the following, in substance and in part:

8

    a. On or about April 25, 2017, the CS and UC-1 met RAISHANI at the UC-1 Apartment. In the course of that meeting, which was audio- and video-recorded, the following occurred, in substance and among other things:

      i. RAISHANI used the Laptop to download and play an ISIS video that appeared to depict ISIS members in Yemen killing civilians who did not support ISIS.

      ii. RAISHANI expressed the belief that a person should pay off all debts before traveling to pursue jihad.

      iii. RAISHANI advised UC-1 that to prepare for traveling to the Islamic State, UC-1 should begin saving money, training physically, and learning more Arabic.

    b. On or about April 27, 2017, UC-1 met RAISHANI in the Bronx, and they engaged in conversation. In the course of that meeting, which was audio-recorded, RAISHANI and UC-1 discussed the following, in substance and among other things:

      i. RAISHANI suggested that if he and UC-1 chose to travel to Yemen, RAISHANI could pose as a nurse,[7] and UC-1 could pose as a refugee aid worker, in order to gain entry to the country without being stopped and questioned by authorities.

      ii. RAISHANI told UC-1 that they should both start engaging in physical training to prepare to travel.

      iii. RAISHANI advised UC-1 that he should be strategic about his travel plans. For example, RAISHANI advised UC-1 not to share any travel plans with others until approximately four or five days before his date of travel, and to avoid discussing any details concerning his travel plans, such as dates or times, by phone, in part because his phone could be tapped and his plans could be "foil[ed]" by law enforcement or others.

---

[7] In the course of the meetings and calls discussed herein, SADDAM MOHAMED RAISHANI, a/k/a "Adam Raishani," the defendant, indicated that he is a trained nurse who formerly worked at a certain hospital and, as of early June 2017, was working for a certain home care provider.

    c. On or about May 4, 2017, the CS and UC-1 met RAISHANI at the UC-1 Apartment. In the course of that meeting, which was audio- and video-recorded, RAISHANI, the CS, and UC-1 discussed the following, in substance and among other things:

    i. The CS conveyed to RAISHANI that he/she might be able to obtain — purportedly through an acquaintance whose family member had traveled from the United States to Yemen to join ISIS — contact information for an ISIS affiliate who had facilitated that person's travel.

    ii. RAISHANI expressed his desire to contact the purported facilitator in Yemen.

    d. On or about May 16, 2017, the CS and UC-1 met RAISHANI at the UC-1 Apartment. In the course of that meeting, which was audio- and video-recorded, RAISHANI, the CS, and UC-1 discussed the following, in substance and among other things:

    i. RAISHANI told the CS to let him know as soon as the CS had obtained contact information for the purported facilitator in Yemen, see supra ¶ 7(c)(i).

    ii. RAISHANI told the CS that, going forward, the CS should only contact RAISHANI on the Application, and that the CS should not reference the Islamic State in their messages on the Application.

    e. On or about May 25, 2017, the CS and UC-1 met RAISHANI at the UC-1 Apartment. In the course of that meeting, which was audio- and video-recorded, RAISHANI, the CS, and UC-1 discussed the following, in substance and among other things:

    i. The CS conveyed that he/she had obtained contact information on the Application for the purported facilitator in Yemen.

    ii. The CS gave RAISHANI a piece of paper containing the purported facilitator's account address on the Application — which was, unbeknownst to RAISHANI, an account used by UC-2 for purposes of this investigation.

    iii. RAISHANI indicated that he would contact the purported facilitator, i.e., UC-2. RAISHANI also expressed an interest in ascertaining whether UC-1 was prepared to travel overseas to join ISIS.

   f.   Several days later, on or about May 29, 2017, RAISHANI — using a particular account address on the Application ("Raishani Account-1") — contacted UC-2 on the Application. In the course of the ensuing conversation on the Application, RAISHANI and UC-2 exchanged the following messages, in substance and in part:

      i.   RAISHANI informed UC-2 that he (RAISHANI) had previously "helped a sincere brother" — which I believe, based on my participation in this investigation, was a reference to RAISHANI's helping Person-1 to travel overseas to join ISIS, see supra ¶ 6(b)(iii).

      ii.   RAISHANI stated that he was seeking guidance for his own "hijrah."[8]

      iii.   RAISHANI stated that he aspired to finish his travel with "istishhad" and victory for the "Ummah."[9]

   g.   On or about June 2, 2017, the CS and UC-1 met RAISHANI in Queens, and subsequently engaged in conversation. In the course of that meeting, which was audio-recorded, RAISHANI, the CS, and UC-1 discussed the following, in substance and in part:

      i.   RAISHANI conveyed to the CS that he had contacted the purported ISIS facilitator — that is, UC-2 — on the Application.

      ii.   RAISHANI asked the CS if he/she would travel with RAISHANI, and the CS indicated that he/she was willing to go with RAISHANI. RAISHANI asked the CS whether the CS would bring his/her spouse or leave him/her in the United States. The CS responded that he/she would need to speak with his/her family. RAISHANI asked the CS how long he/she needed before being ready to travel. The CS responded by indicating

---

[8] Through my training and experience, I have learned that "hijrah" (or "hijra") is an Arabic term normally used to refer to migration, but which is also used by ISIS supporters to refer to traveling overseas to join ISIS and engage in jihad.

[9] Through my training and experience, I have learned that "istishhad" is an Arabic term generally meaning "martyrdom," and "Ummah" is an Arabic term generally referring to the Muslim community.

11

two to three months. RAISHANI stated that he would not wait that long and wished to travel during Ramadan.[10]

            iii. RAISHANI indicated that he owed several thousand dollars in debt that would need to be paid off before he could travel.[11]

            iv. RAISHANI conveyed to the CS that while it would be difficult leaving his wife and child to join the Islamic State, he knew that he was making the right choice.

            v. RAISHANI indicated that he would continue communicating with UC-2 for the purpose of arranging his travel.

      h. Between on or about June 4 and June 6, 2017, RAISHANI (using Raishani Account-1) and UC-2 engaged in further electronic communications on the Application, during which RAISHANI continued to discuss his plans to travel overseas. The communications between RAISHANI and UC-2 included the following, in substance and in part:

            i. RAISHANI asked UC-2 whether it would be easier to travel to Yemen or to Syria to join ISIS. UC-2 responded that Yemen would be easier, as it was currently difficult to travel to the Islamic State in Syria.

            ii. RAISHANI stated that he would be ready to travel in approximately two weeks.

            iii. RAISHANI specified that he could depart from JFK Airport or Newark International Airport in New Jersey.

      i. On or about June 7, 2017, the CS and UC-1 met RAISHANI at a certain mosque in Manhattan, and they engaged in conversation as they walked a few blocks away from the mosque. In the course of that meeting, which was audio-recorded, RAISHANI, the CS, and UC-1 discussed the following, in substance and among other things:

---

[10] Through my training and experience, I have learned that Ramadan is the Islamic holy month and that Ramadan runs from approximately May 26 to June 24 this year.

[11] Through my training and experience and my participation in this investigation, I have learned that the failure to pay a debt can be considered a grave sin in Islam.

    i. RAISHANI referenced his communications on the Application with UC-2. For example, RAISHANI informed the CS and UC-1 that, although UC-2 had indicated that it would be easier to join ISIS in Yemen as opposed to Syria, his (RAISHANI's) aspiration was to travel to Syria to join ISIS.

    ii. RAISHANI stated that, should he travel during Ramadan, his last week of work could be that week (i.e., the week ending Sunday, June 11, 2017). Under that schedule, RAISHANI conveyed that he expected to receive his next — and last — paycheck on Friday, June 16, 2017, and that he would be prepared to travel after that date.

    iii. RAISHANI described certain steps that he had taken or planned to take in preparation for traveling overseas to join ISIS, stating, for example, that: RAISHANI had paid approximately $1,400 in credit card debt, leaving approximately $600; RAISHANI was looking into selling his car to generate additional funds; and RAISHANI planned to prepare a will to be given to his family after his departure.

    iv. RAISHANI stated that if he is arrested he will not care, because Allah would see that he tried.

  j. On or about June 9, 2017, RAISHANI (using Raishani Account-1) and UC-2 engaged in further electronic communications on the Application, during which RAISHANI continued to discuss his plans to travel overseas. In the course of those communications between RAISHANI and UC-2, RAISHANI conveyed the following, in substance and in part:

    i. RAISHANI's last day of work will be Sunday, June 11, 2017.

    ii. RAISHANI will receive his final paycheck on Friday, June 16, 2017. After receiving that paycheck, RAISHANI will have approximately $2,500 to $3,000 available for purposes of making the trip overseas to join ISIS.

    iii. RAISHANI wished to bring a tactical flashlight. He aspires to work in the medical field for ISIS, and he believes the flashlight will assist him in helping "other brothers" (i.e., fellow ISIS supporters).

    iv. RAISHANI planned to make the trip to join ISIS by the end of the month (i.e., by the end of June 2017).

    k. On or about June 16, 2017, UC-1 met RAISHANI, and they, among other things, engaged in conversation as they went shopping in the Bronx and in Manhattan. In the course of this meeting, which was partially audio-recorded,[12] RAISHANI and UC-1 discussed, among other things, the types of clothing and boots they would need for their travel, and RAISHANI purchased such clothing and boots. Specifically, UC-1 and RAISHANI went to a sporting goods store in New Rochelle, New York, where they purchased articles of clothing that they had previously discussed and identified as items needed for their travel. They then went to another store in New York, New York, where they purchased boots that they had also previously discussed and identified as items needed for their travel.

    l. On or about June 16, 2017, RAISHANI (using Raishani Account-1) and UC-2 engaged in further electronic communications on the Application, during which RAISHANI continued to discuss his plans to travel overseas to join ISIS. In the course of those communications between RAISHANI and UC-2, RAISHANI stated the following, in substance and in part:

      i. RAISHANI and UC-2 discussed RAISHANI's plans to arrive in Turkey on or about Thursday, June 22, 2017, and to meet with a "brother" who would assist RAISHANI in traveling from Turkey to Syria on or about Friday, June 23, 2017.

   8. Based on my review of documents and records, including law enforcement databases, and my conversations with other law enforcement officers and others, I have learned the following, among other things:

    a. On or about June 13, 2017, SADDAM MOHAMED RAISHANI, a/k/a "Adam Raishani," the defendant, purchased an airline ticket for a flight scheduled to depart on or about June 21, 2017, from JFK Airport to Istanbul, Turkey, via Lisbon, Portugal (the "Flight"). RAISHANI paid for the ticket with cash.

   9. Based on my participation in this investigation, my conversations with other law enforcement officers and others, law enforcement communications with CS-1, and law enforcement

---

[12] UC-1 wore recording equipment during the meeting; however, because of the length of the meeting and the device's battery life, the device did not record the entire meeting.

14

surveillance, I have learned the following, in substance and in part:

    a. On or about June 21, 2017, CS-1 met with SADDAM MOHAMED RAISHANI, a/k/a "Adam Raishani," the defendant, in the Bronx. That night, CS-1 and RAISHANI drove from the Bronx to Queens, New York, and CS-1 dropped Raishani off in the vicinity of Jamaica, Queens. Raishani then took a taxi cab from the vicinity of Jamaica, Queens, to JFK Airport.[13]

    b. After arriving at JFK Airport, RAISHANI checked in to board the Flight, passed through security, and was arrested at JFK Airport as he attempted to board the Flight.

    WHEREFORE, deponent respectfully requests that SADDAM MOHAMED RAISHANI, a/k/a "Adam Raishani," the defendant, be imprisoned or bailed, as the case may be.

*/s/ William Slattery*
WILLIAM SLATTERY
Special Agent
Federal Bureau of Investigation

Sworn to before me this
22nd day of June, 2017

*/s/ James L. Cott*
HONORABLE JAMES L. COTT
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

---

[13] During the course of the afternoon on or about June 21, 2017, RAISHANI expressed hesitations to UC-2 about traveling to Syria and an interest in traveling to Yemen instead. As discussed above, RAISHANI and UC-2 had previously discussed RAISHANI's possible travel to Yemen as a place to join ISIS. See supra ¶ 7(h)(i). Also as discussed above, RAISHANI and UC-1 and the CS had also previously discussed the possibility of traveling to Yemen. See supra ¶ 7(b)(i), (c), (d)(i), (e)(i).

15