UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ADAM RAISHANI,
    a/k/a "Saddam Mohamed Raishani,"

                Petitioner,

        -v.-

UNITED STATES OF AMERICA,

                Respondent.

17 Cr. 421 (RA)
20 Civ. 5936 (RA)

**MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA
IN OPPOSITION TO PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE,
SET ASIDE, OR CORRECT HIS SENTENCE**

AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Sidhardha Kamaraju
Jane Kim
George D. Turner
Assistant United States Attorneys
    *Of Counsel*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

RELEVANT BACKGROUND ...................................................................................................3

I.      The Offense Conduct ........................................................................................................3

II.     The Charges, Raishani's Guilty Plea, and Sentencing.......................................................6

ARGUMENT ...............................................................................................................................10

I.      Raishani's Counsel Was Not Ineffective ........................................................................10

II.     Raishani's Guilty Plea Was Knowing and Voluntary.......................................................13

CONCLUSION............................................................................................................................14

**PRELIMINARY STATEMENT**

The Government respectfully submits this memorandum of law in opposition to the *pro se* petition of Adam Raishani, a/k/a "Saddam Mohamed Raishani" ("Raishani" or the "defendant"), to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (the "Petition"). As explained below, Raishani's Petition, which claims ineffective assistance of counsel and that his plea was not knowing and voluntary, is meritless. The Petition rests on the assertion that Raishani should have faced a statutory maximum sentence of 15 and not 20 years' imprisonment for providing material support to a terrorist group, because the old version of the material-support statute, 18 U.S.C. § 2339B—which was amended in 2015 to increase the maximum penalty from 15 to 20 years—should have applied in this case. That is simply incorrect. Raishani pled guilty to a Section 2339B count based on conduct, as explicitly set forth in the charging instrument, that occurred in 2017, well after the amendment. And at his plea proceeding, Raishani was advised, and expressly acknowledged, that the Section 2339B offense to which he was pleading guilty carried a statutory maximum of 20 years. The Petition should be denied, and there is no need for a hearing.

On November 15, 2018, Raishani pled guilty to Superseding Information S2 17 Cr. 421 (RA) (the "Superseding Information"), pursuant to a plea agreement with the Government (the "Plea Agreement"). (Dkts. 48, 52). The Superseding Information charged Raishani with: (i) attempting to provide material support and resources to the Islamic State of Iraq and al-Sham ("ISIS"), from at least in or about January 2017, up to and including in or about June 2017, in violation of 18 U.S.C. § 2339B, based on his attempted travel to join ISIS in Syria (Count One); and (ii) conspiring with another ISIS supporter ("CC-1") to provide material support and resources to ISIS, from in or about September 2015, up to and including in or about June 2017, in violation of 18 U.S.C. § 371 (Count Two). (Dkt. 48).

During the November 2018 plea proceeding, the Court advised Raishani of the maximum penalties that he faced—which included a maximum sentence of 20 years' imprisonment on Count One and a maximum sentence of five years' imprisonment on Count Two—and the defendant confirmed that he understood these penalties. (Ex. A (Dkt. 52 ("Plea Tr.") at 12-13)). Raishani also confirmed that he had read the Plea Agreement, reviewed it with his attorney, understood its terms, and signed it. (*Id.* at 16-17). The Plea Agreement specified the maximum penalties Raishani faced, and, under its terms, the parties stipulated to an applicable Guidelines sentence of 300 months' imprisonment. (Ex. B ("Plea Ag.") at 1, 3). After confirming that Raishani understood his rights and the terms of the Plea Agreement, among other things, the Court concluded that Raishani had "knowingly and voluntarily" pled guilty. (Plea Tr. at 24). On April 2, 2019, the Court sentenced Raishani to the statutory maximum of 20 years' imprisonment on Count One and to the statutory maximum of five years' imprisonment on Count Two, to run concurrently. (Dkt. 60).

On or about July 30, 2020, the Petition, dated July 23, 2020, was filed on the docket. (Dkt. 69 ("Pet.")). In the Petition, Raishani argues that: (i) his trial counsel was ineffective for not arguing that the statutory maximum penalty for Count One (the Section 2339B violation) was 15 rather than 20 years' imprisonment (Pet. at 2-3);[1] and (ii) his guilty plea was not knowing and voluntary because, at the time of his plea, Raishani should have been (incorrectly) advised that the statutory maximum penalty was 15 rather than 20 years' imprisonment (*id.* at 3-4). For the reasons discussed below, Raishani's claims are without merit. While Congress amended Section 2339B on June 2, 2015, to increase the statutory maximum penalty from 15 to 20 years' imprisonment,

---

[1] Raishani was initially represented by Sabrina Shroff, Esq., then of the Federal Defenders of New York, until he retained Gerald Joseph McMahon, Esq., on or about September 28, 2018. (Dkt. 33).

2

the time period for Count One begins in or about January 2017. (Dkt. 48 at 1). Accordingly, the statutory maximum penalty for Count One is, in fact, 20 years' imprisonment. 18 U.S.C. § 2339B(a)(1). Raishani expressly confirmed his understanding of that 20-year statutory maximum at the plea proceeding and in his Plea Agreement. Raishani's ineffective assistance claim, as well as his contention that his guilty plea was not knowing or voluntary, thus have no factual basis. His Petition should be denied without a hearing.

## RELEVANT BACKGROUND

### I. The Offense Conduct

By in or about September 2015, Raishani had become a fervent supporter of ISIS. Over the course of approximately two years, from in or about September 2015 to the time of his arrest in June 2017, Raishani continued to support ISIS by agreeing with and assisting CC-1 to travel to Syria to join ISIS (February 6, 2019, Presentence Investigation Report ("PSR") ¶¶ 9-10), and by attempting to travel to Syria to join ISIS himself (*id.* ¶¶ 15-17).

Specifically, in the fall of 2015, Raishani made a pact with CC-1 to travel to Syria to join ISIS. They agreed that CC-1 would depart first for ISIS, which he did, in October 2015. Raishani and CC-1 had attended the same mosque in the Bronx, where they both resided, and developed a relationship in the months leading up to CC-1's departure for the Islamic State. (*Id.* ¶ 9). Prior to CC-1's departure, Raishani went shopping with CC-1 in the Bronx to purchase supplies for CC-1's journey to Syria to join ISIS. (*Id.* ¶ 10). On October 30, 2015, CC-1 flew from John F. Kennedy International Airport ("JFK Airport") to Turkey (via Italy), where he planned to cross into Syria to join and fight for ISIS. (*Id.*). Raishani helped to coordinate CC-1's transportation to JFK Airport, and accompanied CC-1 to the airport. (*Id.*). Raishani and CC-1 agreed that Raishani would join ISIS at a later date. (*Id.* ¶ 9).

Following CC-1's departure, Raishani sent a series of encrypted emails to CC-1 repeatedly inquiring, in coded terms, as to whether CC-1 had successfully reached ISIS. (*Id.* ¶ 11). In those encrypted emails, Raishani also made various references to his and CC-1's shared support for ISIS. (*Id.*). In May 2016, CC-1 responded to Raishani, indicating that he had succeeded in joining ISIS, and that he was fighting for ISIS against "the kuffars," or non-believers. (*Id.* ¶ 12). There is no record of CC-1 ever returning to the United States. (*Id.*).

Several months later, in January 2017, Raishani connected with an individual who was, unbeknownst to Raishani, a confidential source ("CS") working with law enforcement. (*Id.* ¶ 13). The CS observed an image of the ISIS flag displayed on Raishani's cellphone, and asked Raishani if he supported ISIS. (*Id.*). Raishani indicated that he did, and told the CS to download a particular encrypted Internet browser, which Raishani stated that he used to access and view ISIS propaganda videos online. (*Id.*). Raishani also referenced having assisted CC-1 to travel overseas to join ISIS, and said that he desired to travel overseas to join ISIS himself. (*Id.*). Over the ensuing months, the CS, acting at the direction of the Federal Bureau of Investigation ("FBI") and New York City Police Department ("NYPD"), maintained contact with Raishani and introduced him to an undercover NYPD detective ("UC-1"), who posed as a fellow ISIS supporter also looking to travel overseas to join ISIS. (*Id.* ¶ 14).

Between January 2017 and June 2017, the CS and UC-1 had a series of meetings with Raishani, many of which were recorded. (*Id.*). During those meetings, Raishani repeatedly expressed his fervent support for ISIS and its mission, embraced its violent ideology, viewed ISIS propaganda videos glorifying the murder of civilians, reiterated his desire to join ISIS overseas, and described supporting CC-1 in his successful effort to travel abroad to join ISIS. (*Id.*). Raishani

4

also engaged in sophisticated operational security measures in an effort to conceal his allegiance to ISIS from law enforcement. (*Id.*; Dkt. 1 ¶¶ 6(h), 7(a) ("Compl.")).

In the course of Raishani's meetings with the CS and UC-1, Raishani made clear that he regretted not having accompanied CC-1 to join ISIS in Syria in 2015 and that he was determined to travel overseas to join ISIS himself. (PSR ¶ 15). During recorded meetings in April and May 2017, Raishani discussed undertaking specific preparations for leaving the United States and joining ISIS abroad. (*Id.*). For example, Raishani expressed his belief that a Muslim must pay off all debts before traveling to join ISIS and pursue jihad, and he instructed UC-1 that if UC-1 wished to accompany Raishani to ISIS, UC-1 would need to follow Raishani's example of saving money and training physically. (*Id.*). Raishani informed the CS and UC-1 that Raishani planned to leave for ISIS before the end of the Islamic holy month of Ramadan, which ran from approximately May 26 to June 24 in 2017. (*Id.*).

At Raishani's request, the CS gave Raishani contact information on an encrypted messaging application (the "Application") for a purported ISIS affiliate who could help facilitate Raishani's travel to ISIS-controlled territory once he reached Turkey. (*Id.* ¶ 16). Soon thereafter, Raishani contacted the purported facilitator, who was in fact an undercover FBI agent ("UC-2"). (*Id.*). Over the course of late May and June 2017, Raishani exchanged encrypted messages with UC-2 on the Application. Raishani expressed his interest in making "hijrah" (migrating to ISIS-controlled territory to join ISIS and pursue jihad); he informed UC-2 that he had previously "helped a sincere brother" (a reference to CC-1) travel abroad to join ISIS; and he conveyed that he aspired to finish his journey with "istishhad" (martyrdom). (*Id.*; Compl. ¶ 7(f)(iii)). Raishani also discussed with UC-2 whether it would be easier for Raishani to travel to Syria or Yemen to join ISIS. (PSR ¶ 16).

5

Raishani ultimately decided that he would seek to join ISIS in Syria. (*Id.* ¶ 17). Raishani purchased an airline ticket departing JFK Airport for Istanbul (via Portugal), and finalized preparations for his journey: he paid off thousands of dollars of debts; he sold his car to generate additional funds for the trip; and he went shopping, with the CS and UC-1, to purchase supplies, including clothing items and a tactical flashlight. (*Id.*).

In June 2017, after unsuccessfully seeking to radicalize his wife and convince her to join him, and leaving behind his young son, Raishani attempted to travel overseas to join ISIS by himself. He purchased a ticket to Turkey, where he planned to cross into Syria to ISIS-controlled territory. (*Id.* ¶ 18). On June 21, 2017, he was arrested at JKF Airport as he attempted to travel to the Islamic State.

Following the arrest, the FBI searched Raishani's Bronx residence pursuant to a search warrant. (*Id.* ¶ 19). The FBI recovered, from a safe in Raishani's bedroom, a "will" that Raishani had addressed to members of his family (the "Will"). (*Id.*). Raishani had previously informed the CS and UC-1 that he planned to prepare a will for family members prior to departing for ISIS. (*Id.*). In the Will, Raishani advised his wife that she could still choose to "[j]oin" him and ISIS overseas; expressed regret that she did not share his radical views and that he had been unable to convince her to accompany him to join ISIS; and instructed his wife: "Do Not Divulge this document and other documents that I have giv[en] to you to the authorities. Do not believe their plots. Do not divulge my absences but instead say I went to do volunteering outside the country with my medical skills and health background." (Dkt. 58 at 6-7).

## II.   The Charges, Raishani's Guilty Plea, and Sentencing

On June 22, 2017, following his arrest, Raishani was charged by complaint with attempting to provide material support and resources to a designated foreign terrorist organization (ISIS), from

6

at least in or about January 2017, up to and including in or about June 2017, in violation of 18 U.S.C. § 2339B. (Dkt. 1). On June 29, 2017, a grand jury in this District returned Indictment 17 Cr. 421 (GHW) charging Raishani with the same offense. (Dkt. 5). On September 7, 2017, the grand jury returned Superseding Indictment S1 17 Cr. 421 (GHW) charging Raishani with: (i) attempting to provide material support and resources to ISIS, from at least in or about January 2017, up to and including in or about June 2017, in violation of 18 U.S.C. § 2339B; (ii) conspiring to provide material support and resources to ISIS, from at least in or about September 2015, up to and including in or about May 2016, in violation of 18 U.S.C. § 2339B; and (iii) providing, attempting to provide, and aiding and abetting the provision of material support and resources to ISIS, from at least in or about September 2015, up to and including in or about May 2016, in violation of 18 U.S.C. §§ 2339B and 2. (Dkt. 15).

On November 15, 2018, Raishani pled guilty to the Superseding Information pursuant to the Plea Agreement. (Dkts. 48, 52). The Superseding Information charged Raishani with: (i) attempting to provide material support and resources to ISIS from at least in or about January 2017, up to and including in or about June 2017, in violation of 18 U.S.C. § 2339B (Count One); and (ii) conspiring with CC-1 to provide material support and resources to ISIS, from at least in or about September 2015, up to and including in or about June 2017, in violation of 18 U.S.C. § 371 (Count Two). (Dkt. 48).

During the plea proceeding, the Court confirmed that Raishani had read the Plea Agreement, discussed it with his attorney, understood all of its terms, and had willingly signed it. (Plea Tr. at 16-17, 19). The Plea Agreement expressly stated that: "Count One carries a maximum sentence of 20 years' imprisonment"; "Count Two carries a maximum term of imprisonment of five years"; and "[t]he total maximum term of imprisonment on Counts One and Two is 25 years'

imprisonment." (Plea Ag. at 1). The Plea Agreement outlined a Guidelines calculation that resulted in an applicable Guidelines range of 360 months' imprisonment to life imprisonment. (*Id.* at 3). Under the terms of the Plea Agreement, the parties stipulated to an applicable Guidelines sentence of 300 months' imprisonment (the "Stipulated Guidelines Sentence") because the statutorily authorized maximum sentence for Counts One and Two was 300 months' imprisonment, which is less than the bottom end of the recommended Guidelines range. (*Id.*). Pursuant to the Plea Agreement, Raishani agreed not to file a direct appeal or bring a collateral challenge under 28 U.S.C. § 2255, or seek a sentence modification under 18 U.S.C. § 3582(c), of any sentence at or below the Stipulated Guidelines Sentence of 300 months' imprisonment, while reserving his right to raise claims of ineffective assistance of counsel. (*Id.* at 4-5).

The Court advised Raishani of the respective maximum terms of imprisonment for Counts One and Two, and Raishani confirmed, under oath, his understanding of these penalties. (Plea Tr. at 11-13). With respect to Count One, the plea colloquy included the following:

> THE COURT: All right. Now I'm going to discuss the maximum penalties. "The maximum" means the most that could possibly be imposed. It doesn't necessarily mean it's the sentence you will receive. But you do have to understand that, by pleading guilty, you are exposing yourself to the possibility of receiving any combination of punishments up to the maximums that I am about to describe. First, with respect to liberty, the maximum term of imprisonment for Count One is 20 years in prison. Do you understand that?
>
> THE DEFENDANT: Yes, your Honor.

(*Id.* at 11-12). The Court also advised Raishani that "the total maximum term of imprisonment [on] Counts One and Two is 25 years in prison," and asked Raishani if he understood that. (*Id.* at 14). Raishani confirmed that he understood. (*Id.*).

Raishani further confirmed that he understood that the parties had agreed that the Guidelines sentence was 300 months' imprisonment, but that he could seek a sentence below that

8

Guidelines sentence. (*Id.* at 18). Raishani also confirmed that he understood that he was "giving up [his] right to appeal or otherwise challenge [his] sentence" if the Court were to sentence him to 300 months' imprisonment or less. (*Id.* at 18-19).

After having been advised of the charges in the Superseding Information, the maximum penalties he faced, and the rights he was giving up, the defendant pled guilty to both counts of the Superseding Information. (*Id.* at 20). During his allocution, Raishani admitted, among other things, as follows:

> [F]or Count One, in June 2017, I attempted to travel to Syria for the purpose of joining ISIS. . . .  As for Count Two, in October 2015, I agreed with another person that we should both join ISIS. I supported him. We traveled overseas to do that. On October 30, 2015, I went with that person in a taxi from the Bronx to the JFK Airport.

(*Id.* at 21-22). Towards the end of the plea proceeding, based on Raishani's responses to the Court's questions, among other things, the Court concluded that Raishani had "knowingly and voluntarily" pled guilty. (*Id.* at 24 (Court: "I'm satisfied that . . . you are aware of the consequences of your plea, including the sentence which may be imposed, and . . . I find that you are knowingly and voluntarily pleading guilty")).

On April 2, 2019, after carefully considering the factors set forth in 18 U.S.C. § 3553(a), the Court sentenced Raishani to the statutory maximum of 20 years' imprisonment on Count One of the Superseding Information, and the statutory maximum of five years' imprisonment on Count Two, to run concurrently. (Dkt. 60). The Court noted:

> [T]here is no danger to society greater than that of terrorism, no danger greater than that posed by those that think that they can impose their will on others through senseless and incomprehensible violence. . . . This is someone who was willing and indeed eager to leave behind his family and young son to join an entity that slaughters innocents, enslaves women, and rapes children. . . . And his devotion to ISIS was not short-lived.

(Dkt. 62 at 25-28).

9

## ARGUMENT

In the Petition, Raishani moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (Pet. at 1). "[A] collateral attack on a final judgment in a federal criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000) (internal quotation marks omitted). Here, Raishani argues that: (i) his trial counsel was ineffective for neglecting to argue that the statutory maximum penalty for Count One of the Superseding Information was 15 rather than 20 years' imprisonment (Pet. at 2-3); and (ii) his guilty plea was not knowing and voluntary because, at the time of his plea, Raishani should have been (incorrectly) advised that the statutory maximum penalty was 15 rather than 20 years' imprisonment (*id.* at 3-4). Raishani ultimately "request[s] an evidentiary hearing, as well as, to be resentence[d] so that the Court can apply post-rehabilitation mitigating factors under Section 3553(a)." (*Id.* at 7).

For the reasons discussed below, Raishani's arguments are meritless. The statutory maximum penalty for Count One is, in fact, 20 years' imprisonment, and there is no legitimate argument to the contrary. 18 U.S.C. § 2339B(a)(1). As a result, Raishani cannot point to any error made by his trial counsel. As to his plea, the record unambiguously establishes that Raishani clearly understood at the time of his plea that he faced a statutory maximum penalty of 20 years' imprisonment on Count One. His ineffective assistance claim, as well as his contention that his guilty plea was not knowing or voluntary, thus have no factual basis. His motion should be denied.

## I. Raishani's Counsel Was Not Ineffective

"A defendant in criminal proceedings has a right under the Sixth Amendment to effective assistance from his attorney at all critical stages in the proceedings, which include entry of a plea of guilty." *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013). To establish a claim of

ineffective assistance of counsel, a petitioner must show that (1) the performance of his attorneys fell below "an objective standard of reasonableness" under "prevailing professional norms," and (2) the petitioner suffered prejudice as a result of that representation. *Strickland v. Washington*, 466 U.S. 668, 687-88, 693-94 (1984). The reviewing court "'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that '[t]here are countless ways to provide effective assistance in any given case' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'" *United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990) (quoting *Strickland*, 466 U.S. at 689). Only where both prongs of the *Strickland* test are satisfied may a court conclude that "counsel was not functioning as the 'counsel' guaranteed to the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A defendant bears a "heavy burden" under the *Strickland* test. *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004).

Here, Raishani's ineffective assistance claim is without merit because there was no "error" by trial counsel. (Pet. at 3).

On June 2, 2015, Congress amended the maximum penalty for violating 18 U.S.C. § 2339B from a maximum term of 15 years' imprisonment to 20 years' imprisonment. Pub. L. 114-23, Title VII, § 704, 129 Stat. 300 (June 2, 2015) (the "June 2015 Amendment"). The June 2015 Amendment went into effect that same day—and undoubtedly applies to Count One of the Superseding Information. *Id.*; *see also* 18 U.S.C. § 2339B(a)(1) (June 2, 2015).

Count One charged Raishani with attempting to provide material support and resources to ISIS from "at least in or about January 2017, up to and including in or about June 2017." (Dkt. 48 at 1). Indeed, during the plea proceeding, Raishani admitted that "for Count One, in June 2017, I attempted to travel to Syria for the purpose of joining ISIS." (Plea Tr. at 21). And the underlying

11

and undisputed facts for Count One involved evidence establishing Raishani's preparations to travel to join ISIS beginning in or about January 2017. (PSR ¶¶ 13-14). The June 2015 Amendment had thus long been in effect by the time Raishani began committing the offense conduct for Count One, and the applicable maximum penalty for Count One was 20 rather than 15 years' imprisonment. 18 U.S.C. § 2339B(a)(1).

Raishani contends that his "conspiracy began before [the amendment]" and that his "criminal conduct began in 2015." (Pet. at 2-3). To the extent that Raishani argues that his attorney should have raised the June 2015 Amendment in the context of Count Two, his argument again fails. Count Two of the Superseding Information charged Raishani with conspiracy to provide material support and resources to ISIS, from in or about September 2015, up to and including in or about June 2017, in violation of 18 U.S.C. § 371. (Dkt. 48 at 2-4). Because Raishani pled guilty to a Section 371 offense, he faced a maximum penalty of only five years rather than 20 years' imprisonment on Count Two.[2]

As the foregoing makes plain, trial counsel did not "mediat[e] a plea deal that lock[ed] the defendant into more time as required by conviction of statute." (Pet. at 4). Raishani's attorney therefore did not make an "unprofessional error" or any error at all in not challenging the applicable maximum penalty prior to the defendant's guilty plea—nor would such a challenge have resulted

---

[2] To the extent that Raishani aims his ineffective assistance challenge at Count Two of the Superseding Indictment—which charged Raishani with conspiring to provide material support and resources to ISIS, from at least in or about September 2015, up to and including in or about May 2016, in violation of 18 U.S.C. § 2339B—this argument is misplaced because Raishani did not plead guilty to the Superseding Indictment. (Dkt. 15). Even assuming, however, that Raishani had pled guilty to Count Two of the Superseding Indictment, his argument still fails because the June 2015 Amendment was in effect prior to the start of the charged conspiracy, which began in or about September 2015. Further, even if the conspiracy had started before June 2015, "[i]t is well-settled that when a statute is concerned with a continuing offense, the *Ex Post Facto* clause is not violated by application of a statute to an enterprise that began prior to, but continued after, the effective date of the statute." *United States v. Monaco*, 194 F.3d 381, 386 (2d Cir. 1999). Here, the charged conspiracy ran into at least May 2016, well after the June 2015 Amendment.

in a different outcome, as it cannot be disputed that the applicable maximum penalty on Count One was 20 years' imprisonment. *See Strickland*, 466 U.S. at 694. Indeed, the statutory maximum penalty for *all* of the Section 2339B counts alleged in the various charging instruments filed in the course of this prosecution was 20 years' imprisonment, since each of those counts, as reflected above, charged a time period extending into 2016 or 2017. Counsel cannot have been ineffective for failing to make an argument that simply was not available in this case. *See Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) ("The failure to include a meritless argument does not fall outside the 'wide range of professionally competent assistance' to which Petitioner is entitled." (internal citations omitted)).

**II.     Raishani's Guilty Plea Was Knowing and Voluntary**

Raishani contends that if he had "known that the conspiracy [under Section 2339B] carried a 15 year statutory maximum, instead of a 20 year statutory maximum when the conspiracy began, he would not have entered into a plea agreement." (Pet. at 3-4). For the reasons discussed above, the statutory maximum penalty for Count One of the Superseding Information was 20 years' imprisonment and for Count Two was five years' imprisonment. Raishani was advised of the correct maximum penalties he faced during the plea proceeding (Plea Tr. at 11-13) and in the Plea Agreement (Plea Ag. at 1), which he read, reviewed with his attorney, understood, and signed (Plea Tr. at 16-17, 19). Indeed, Raishani stipulated in his Plea Agreement and acknowledged at the plea proceeding that the applicable Guidelines sentence was 300 months' imprisonment, that is, 25 years—further belying the claim that he was unaware that he could face a sentence of greater than 15 years. At the plea proceeding, Raishani affirmatively stated, under oath and multiple times, that he understood the maximum penalties he faced, including the 20-year maximum on Count One. (Plea Tr. at 18). As the Supreme Court has explained, "[t]he representations of [a] defendant at [a plea] hearing . . . constitute a formidable barrier in any subsequent collateral proceedings.

13

Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *see United States v. Hernandez*, 242 F.3d 110, 112 (2d Cir. 2001) ("[T]he district court was entitled to rely upon the defendant's sworn statements, made in open court . . . that he understood the consequences of his plea . . . ."); *Hsu v. United States*, 954 F. Supp. 2d 215, 221 (S.D.N.Y. 2013) ("Any allegations a defendant makes in a § 2255 petition 'cannot overcome his contrary statements under oath during a plea allocution, which must be given presumptive force of truth.'" (quoting *Hernandez*, 242 F.3d at 112-13)).

The record thus establishes that Raishani's guilty plea was knowing and voluntary under Rule 11. *See* Fed. R. Crim. P. 11(b)(2); *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). Nor does Raishani's Petition raise any issue that could warrant a hearing. *See Gonzalez v. United States*, 722 F.3d 118, 131 (2d Cir. 2013) (to warrant hearing, Section 2255 petition "must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the defendant] to relief"); *see also Machibroda v. United States*, 368 U.S. 487, 495 (1962) (hearing on Section 2255 petition not warranted where petitioner's allegations are "vague, conclusory, or palpably incredible").

## CONCLUSION

For the foregoing reasons, Raishani's Petition should be denied without a hearing.

Dated: New York, New York
October 12, 2020

                                                          Respectfully submitted,

                                                          AUDREY STRAUSS
                                                          Acting United States Attorney

                           By: _____/s/_____
                                   Sidhardha Kamaraju
                                   Jane Kim
                                   George D. Turner
                                   Assistant United States Attorneys
                                   (212) 637-6523 / 2038 / 2562

14

## AFFIRMATION OF SERVICE

I, Jane Kim, affirm under penalty of perjury as follows:

1. I am an Assistant United States Attorney in the Southern District of New York.

2. On October 12, 2020, I caused a copy of the foregoing to be served on the defendant via U.S. mail at the following address:

>Adam Raishani
>a/k/a "Saddam Mohamed Raishani"
>Register Number:  76012-054
>FCI FAIRTON
>P.O. Box 420
>Fairton, NJ 08320

Dated:  New York, New York
        October 12, 2020

/s/ Jane Kim
Jane Kim
Assistant United States Attorney
(212) 637-2038