# JOHN M. BURKE

Attorney at Law

26 Court Street - Suite 2805
Brooklyn, New York 11242
Tel: (718) 875-3707
Fax: (718) 875-0053

July 7, 2002

Honorable Ronnie Abrams
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: United States v. Saddam Mohamed Raishani
17 Cr. 421

Dear Judge Abrams:

I am writing on behalf of Saddam Mohamed Raishani to briefly supplement his previously filed motion for compassionate relief pursuant to 18 U.S.C. 3582(c). Although the motion has been fully and extensively briefed by the parties I wish to stress several points that favor granting Raishani a sentence reduction.

I. HARSH AND LENGTHY SENTENCE

Raishani is a 35 year old United States citizen who was born in Yemen. He is a college graduate and a registered nurse. Raishani was living in the Bronx with his wife and two children prior to his arrest. The instant case is his first arrest and only conviction. Raishani does not contest his guilt and accepts responsibility for his crime. He realizes that his attempt to provide material support to ISIS and conspiring to provide material support to ISIS were extremely serious crimes.

For many years, countries in Western Europe and the Middle East have incorporated deradicalization and disengagement programs into their regular practice when confronted with individuals assessed as having been radicalized or individuals that heve been charged or convicted of terrorism-related crime. *See, e.g.* United Nations Office on Drugs and Crime, *Handbook on the Management of Violent Extremist Prisoners and the Prevence of Radicalization to Violence in Prisons* 122-23 (2016) ("The [Danish] Back on Track…[program was designed to help prisoners who have been charged or convicted of terrorism related offences, or who have been assessed as vulnerable to radicalization"); Kelly A. Berkell, *Off-Ramp Opportunities in Material Support Cases,* 8 Harv. J. Nat'l Security 128-32 (2017) (describing the deradicalization program used by Saudi Arabia).

In Europe, countries such as Denmark and the Netherlands have designed and used intensive disengagement and deradicalization programs to assist prisoners charged and convicted of terrorism-related offenses. The United States has no such program . Despite the lack of a formal deradicalization program Raishani has taken personal and formative steps toward rehabilitation.

The defense would like to stress that even for serious offenses 20 years is a harsh sentence for first time offenders who have not committed murder. It should also be noted that during the period when Raishani was involved in his criminal behavior government agents and informants flooded many of the Mosques in the New York City area. In Raishani's case he was in contact with a confidential source and two undercover agents during the six month period prior to his arrest. Raishani does not argue that he was entrapped[1] or enticed into committing crimes but it appears that government intervention at an earlier stage in the conspiracy could have prevented some of Raishani's more extreme behavior. Although the Government and its agents may not have encouraged Raishini to travel to Syria or support ISIS they did nothing to dissuade him and, other than arresting him at the airport, did nothing to prevent him from continuing in his illegal plans. The Government agents were patient observers of the criminal conspiracy, content to let it play out until the final act.

Raishani's comments and observations regarding the punitive nature of the sentencing enhancements attached to his crime are not an attempt to avoid responsibility for his actions or escape from just punishment. They are valid criticisms of an unduly harsh sentencing scheme that raised Raishani's offense level by <u>12</u> points and forced a first time offender to be treated the same as a habitual criminal in Category VI. U.S.S.G. § 3A1.4 (a)(b). If Raishani's sentence was calculated sans enhancements his suggested guideline range would have been 46-57 months. Raishani does not contest the legality of his sentence but contends the nature of the sentencing structure for his crime resulted in an unduly harsh result supporting his request for a sentence reduction.

II. <u>REHABILITATION</u>

Western European countries have adopted their own versions of America's material support statutes but with a more lenient sentencing structure. The French penal code prosecutes the participation in any terrorist group with up to ten years in prison. In Germany citizens who travel outside the country to receive terrorist training can spend no more than ten years in custody. England punishes members in proscribed terrorist groups with a maximum jail term of ten years. In Belgium ex-jihadist soldiers returning from Syria normally face a three to five year prison sentence. <u>United States</u> v. <u>Doe</u> 323 F. Supp. 3d. 308, 387-388 (E.D.N.Y. 2018).

---

[1] Raishani helped another conspirator travel to Turkey before having any contact with Government agents.

[Type here]

During the more than five years Raishani has spent in custody he has come to deeply regret his criminal acts. He has re-examined the ideological and intellectual basis for his aberrant behavior and admitted the flaws and mistakes inherent in his prior religious beliefs. Raishani has renounced the extreme ideology that generated his zealotry. The Government views Raishani's "purported rehabilitation" as being too tenuous to support his request for a sentence reduction. However, in the instant case Raishani's claims of rehabilitation are amply buttressed by his post arrest behavior.

While Raishani was held at the MCC in pre-trial custody he participated in various programs that encouraged prisoners to become peaceful citizens. He was an active member of the Focus Forward Lead by Example, and Step by Step Programs. Raishani also worked as a GED tutor and counseled fragile and suicidal prisoners. He is currently a participant in the Link Outside Program, an organization dedicated to supporting the spiritual and educational well being of imprisoned members of the Muslin faith. Raishani has also become a member of the Embracing Interfaith Cooperation Program while held in custody of Fairton F.C.I.

Raishani completed over 20 educational programs while at the MCC. During his time at Fairton F.C.I. he has taken vocational and educational courses that required hundreds of hours of study and participation. Raishani believes his nursing and college backgrounds enable him to effectively communicate with emotionally volatile prisoners and he is on the waiting list to become a member of the Suicide Watch Companion Program.

Since his arrival at Fairton F.C.I. Raishani has made outstanding strides toward rehabilitation and become a role model for his peers. In short, Raishani's purported rehabilitation is actual rehabilitation. He is low risk for recidivism and he has no post sentencing disciplinary reports.

III. <u>PRISON CONDITIONS DURING THE PANDEMIC MADE RAISHANI'S CONFINEMENT UNDULY HARSH</u>

Since the start of the Covid-19 crisis over one million Americans have died from the disease. The Federal Prison population has been severely impacted by the pandemic. Over 50,000 federal inmates and 12,868 staff have been infected by the virus since it arrived on our shores. Approximately <u>300</u> federal prisoners have died from Covid-19. During the pandemic 218 inmates and 130 B.O.P. staff members were sickened by the disease at Fairton F.C.I. There are presently four members of the B.O.P. staff at Fairton that have confirmed active cases of Covid. <u>B.O.P. Covid-19 update June 21, 2022.</u>

Due to the pandemic Raishani's liberty within the prison was curtailed and the entire facility was frequently on lock down. Families were prevented from visiting their loved ones and the inmates' sense of isolation was exponentially increased. Prisoners were either

sick or afraid of getting sick. The Covid Pandemic and the conditions of custody Raishani was forced to endure made his imprisonment unduly harsh and far more punitive then an ordinary term in prison.

Although the Government has sought to classify Raishani's claims regarding the pandemic as "generic" it fails to address the personal suffering experienced by Raishani and every other inmate held in custody during the Covid-19 crisis. Long before the pandemic Courts in this Circuit frequently granted sentence reductions due to harsh conditions of pre-trial confinement. The Pandemic's onerous impact upon Raishani's prison term is a factor that was unforeseen at the time of his original sentence.

Assuming that Raishani's pre Pandemic sentence of 20 years was no longer than necessary the defense contends that a term of less than 20 years would be appropriate in a post pandemic world.

## CONCLUSION

Saddam Mohamed Raishani has made a fulsome and detailed *pro-se* motion for compassionate release. His submission is replete with legal citations and exhibits supporting his request for a reduced sentence. His rehabilitation, the effects of Covid-19 on his conditions of custody, the length of his custodial sentence and his family responsibilities are mitigating factors to be considered when deciding his petition for compassionate release. United States v. Brooker, 926 F.3d 228 (2d Cir. 2020).

Raishani is mindful that the Court's decision to grant him any sort of relief is based on the broad discretion of the Court. He repents his serious crimes against the commonweal and beseeches the Court for mercy.

                              Respectfully submitted,

                              s/
                              JOHN BURKE
                              Attorney for Saddam Mohammed Raishani

[Type here]